IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

**BAY TEK ENTERTAINMENT, INC.**

    Plaintiff,

vs.                                                                  Case No. 18-CV-1892

**WEDGES & LEDGES OF CALIFORNIA INC.,**

and,

**STEPHEN SHOEMAKER,**

    Defendants

---

## COMPLAINT FOR DECLARATORY RELIEF

---

The Plaintiff, through its attorneys, the Menn Law Firm, Ltd., alleges and states as a cause of action against the Defendants as follows:

### THE PARTIES

1. The Plaintiff, Bay Tek Entertainment, Inc. ("Bay Tek"), is a Wisconsin business corporation whose principal place of business and registered agent is located at 1077 East Glenbrook Drive, Pulaski, WI 54162. Bay Tek was previously known as Bay Tek Games, Inc., prior to a corporate name change effective November, 2018.

2. Bay Tek is engaged in the business of developing, manufacturing, and selling ticket redemption games (colloquially referred to as "arcade games").

01102828.DOCX                                         1

3. The Defendant, Wedges & Ledges of California Inc. ("Wedges"), is, upon information and belief, a California business corporation whose registered agent is located at 123 International Boardwalk, Redondo Beach, CA 90277, and whose principal place of business is located at 531 North Francisca Ave., Redondo Beach, CA 90277.

4. Upon information and belief, Wedges is also engaged in the business of developing and selling arcade games.

5. The Defendant, Stephen Shoemaker ("Shoemaker"), is, upon information and belief a resident of the State of California whose address is unknown, but who is believed to be a resident of Redondo Beach, CA.

6. Upon information and belief, Shoemaker is the president and owner of Wedges.

7. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1332(c)(1), without limitation, because this action is between citizens of different states, and the amount in controversy is in excess of $75,000, exclusive of interest and costs, as evidenced by the Defendants' claim that it is entitled to "hundreds of thousands in royalties" from Bay Tek.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the dispute have occurred in this District/Division, and the machines that are the subject of the action were made and are situated herein.

## FACTS

9. Bay Tek has been an industry leader in the development and promotion of arcade games for over forty years.

10. Because of its prominent standing in the industry, Bay Tek is often presented with concepts for arcade games from unrelated individuals seeking an association with Bay Tek with respect to the development and ultimate sale of their game concepts.

11. Over the course of a year, Bay Tek will explore and test hundreds of game concepts in various ways and to various extents.

12. The due diligence process undertaken by Bay Tek can oftentimes be time-consuming and costly for Bay Tek.

13. In the Summer of 2017, Shoemaker, a self-professed inventor and arcade game developer, initiated contact with Ryan Cravens, an employee of Bay Tek, about the possibility of an association with Bay Tek with respect to one or more of Shoemaker's game concepts.

14. After some communication back and forth, representatives from Bay Tek agreed to meet with Shoemaker in Redondo Beach, CA.

15. The meeting with Shoemaker was one of several other meetings in California that Bay Tek had scheduled with various arcade game industry insiders.

16. On October 17, 2017, two Bay Tek representatives met with Shoemaker and his employee at Shoemaker's and / or Wedges' facility.

17. Shoemaker showed the Bay Tek representatives his various game concepts, and discussions were had regarding potential opportunities for Bay Tek's evaluation, development and possible manufacture and sale thereof.

18. At no time during this October 17, 2017, visit was any agreement entered into between Bay Tek or the Defendants. Essentially, the understanding at the end of the visit was that Bay Tek was interested in potentially working with Shoemaker to research, develop and test a vacuum-based game based on an arcade game Shoemaker was already, and to this day

continues to, produce, market and sell under the name of "Korner Krane" (the "Game") but, only, after Bay Tek's evaluation of the Game and the general concept exhibited by the Game (the "Korner Krane Concept") before making any commitments about a formal commercial relationship.

19. The day after the visit, Shoemaker emailed Bay Tek effectively stating that he wanted to ship, at his cost, various prototype game units of the Game to Bay Tek for Bay Tek to "examine and consider."

20. Bay Tek responded that it would examine any Game units he sent, along with the Korner Krane Concept in further detail, do consumer testing, and, if warranted by successful consumer testing results, "put together a financial structure" for what Bay Tek might be willing to propose to Shoemaker.

21. Shoemaker specifically stated in ensuing emails that he was "in no hurry," and "this will not happen overnight and I don't want that."

22. On October 31, 2017, Shoemaker forwarded an email setting forth various products he would be interested in licensing to Bay Tek, along with his general comments on possible financial / licensing arrangements.

23. Shoemaker subsequently shipped a prototype Game to Bay Tek for further review and consideration.

24. On November 9, 2017, Shoemaker sent another email outlining "my thoughts on a deal," and further stating: "I am open to negotiation or advice."

25. Bay Tek responded by stating it would review and reply accordingly.

26. Thereafter, Bay Tek never stated, either orally or in writing, that it accepted any of what Shoemaker may have proposed in his October 31, 2017 email.

27. In January, 2018, Bay Tek informed Shoemaker that the evaluation of his Game and the Korner Krane Concept was underway by Bay Tek's research and development team, that Bay Tek was "ready to move forward with serious discussions around business model, project/game scope, and timelines," and that Bay Tek would "be in touch once we have more information on next steps."

28. Over the ensuing months, Bay Tek conducted its due diligence, developed and tested a prototype game developed around Shoemaker's Korner Krane Concept, which Bay Tek called the "G-Machine."

29. In July of 2018, Bay Tek advised Shoemaker of the status of its due diligence, and that it would continue the process and testing of the Korner Krane Concept, after which a representative would contact Shoemaker "with a memo of understanding between our two companies."

30. Bay Tek first consumer tested the G-Machine at its company-owned 10x Game Room arcade for a period of time exceeding two weeks.

31. Bay Tek subsequently consumer tested the G-Machine by placing it at a Wal-Mart in Green Bay, WI, a location often used by Bay Tek to consumer test games still in development.

32. The G-Machine failed to meet financial expectations in both locations.

33. As such, Bay Tek chose to place the G-Machine in Wisconsin's busiest Wal-Mart, located in Onalaska, WI, for further consumer testing, as it was believed that this location would allow the prototype the greatest chance at success.

34. The financial results, though, were similarly poor and disappointing.

35. Further, Bay Tek consumer tested a 4-player version of the G-Machine at Badger Sports Park in Appleton, WI, with equally dismal financial results.

36. It became clear that though Bay Tek was willing to consider the Korner Krane Concept, consumers were not sufficiently impressed, and that significant changes to the Korner Krane Concept and overall game design would be necessary in order to make the Korner Krane Concept sufficiently and economically attractive to the consumer.

37. On August 4, 2018, Shoemaker sent an email to Bay Tek inquiring as to the status of Bay Tek's due diligence and testing, specifically noting "I have not received an offer for licensing of my game," and that "if there is some offer please let me know. If Bay Tek is not interested please let me know and I will go elsewhere."

38. Bay Tek responded by advising that its due diligence and testing was still underway.

39. In the meantime, after the first round of poor initial consumer testing, Bay Tek underwent efforts to redesign the G-Machine, adding new features including increasing the size of the G-Machine's cabinet to increase the units visibility to consumers.

40. The redesigned G-Machine was re-installed in the Onalaska, WI, Wal-Mart, but unfortunately sales/consumer utilization continued to be lackluster.

41. Despite substandard financial performance of the redesigned G-Machine, and after completing its due diligence review of the Korner Krane Concept, on October 2, 2018, Bay Tek presented Shoemaker with a "Deal Memo," which outlined the terms and conditions under which Bay Tek was willing to proceed with licensing the Korner Krane Concept from Shoemaker.

42. A true and correct copy of the Deal Memo is attached to this Complaint as **Exhibit "A"**.

43. On October 4, 2018, Shoemaker responded to the Deal Memo, calling it "embarrassing," and for the first time arguing that because Wedges had entered into an earlier April 2, 2012, and separate licensing agreement for a non-Bay Tek arcade game manufactured by an entirely different corporation with which Bay Tek has, only recently become associated, "the deal was to change the name of the game and the patent number in the existing agreement," resulting in Shoemaker receiving royalties of "$349.50 per game and not $20 or $30."

44. Ultimately, as a result of Shoemaker's response, Bay Tek determined that though the Korner Krane Concept might warrant further consideration, the value, and royalty potential, Shoemaker placed on the Korner Krane Concept was far greater than what could be supported by the results of Bay Tek's due diligence efforts and its consumer testing. As such, on October 15, 2018, Bay Tek advised Shoemaker that it was no longer interested in pursuing further examination, development and testing of the Korner Krane Concept.

45. On November 8, 2018, Bay Tek received a demand from Shoemaker's attorneys, insisting that a binding contract between Bay Tek and the Defendants, with respect to the Korner Krane Concept had been entered into, that Bay Tek had breached that contract, or at the very least, breached an implied covenant of good faith and fair dealing, and that Shoemaker was entitled to significant monetary damages.

46. A copy of that demand letter is attached to this Complaint as **Exhibit "B"**.

47. At no time did Bay Tek ever enter into a binding contract with either, or both, of the Defendants notwithstanding Bay Tek's willingness to explore, through its due diligence process and consumer testing as described above, Shoemaker's Korner Krane Concept.

48. Bay Tek's actions amount to nothing more than having conducted thorough due diligence and consumer testing prior to entering into a commercial relationship with the Defendants.

49. Bay Tek's and Shoemaker's conversations amount to nothing more than mere negotiations and discussions in contemplation of entering into a formal business relationship.

50. All property, in Bay Tek's possession belonging to the Defendants has been returned to the Defendants.

51. The G-Machines developed by Bay Tek based on Shoemaker's Korner Krane Concept are presently sitting in storage in Pulaski, WI, not being used.

52. Except as set forth herein, Bay Tek has not utilized Shoemaker's Games, the Korner Krane Concept or intellectual property.

53. Upon information and belief, Shoemaker continued to market his Games and the Korner Concept, without material interruption, to others since the parties' first meeting on October 17, 2017 and throughout the entire time Bay Tek conducted its due diligence and consumer testing of the Korner Krane Concept.

## COUNT I: DECLARATORY JUDGMENT

54. Bay Tek maintains that there was never a contract between Bay Tek and the Defendants with respect to the ultimate manufacture and sale of the G-Machine game.

55. Shoemaker maintains that there was a contract, that the contract was breached, and that he has supposedly lost out on hundreds of thousands of dollars.

56. Even if there is a contract, Bay Tek is unsure as to whether the contract would be with Shoemaker, individually, or with Wedges, the corporation.

57. There exists a real and actual controversy and justiciable issue as to whether there exists a contract, oral or otherwise, between Bay Tek and Shoemaker.

58. There exists a real and actual controversy and justiciable issue as to whether there exists a contract, oral or otherwise, between Bay Tek and Wedges.

59. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, this Court may declare the rights and legal relations of the parties regarding what, if any, contract may exist, with whom, and to what extent Bay Tek's obligations may be under said contract.

WHEREFORE, the Plaintiff, Bay Tek Entertainment, Inc., hereby requests that this Court enter a declaratory judgment in its favor and against each respective Defendant ordering and declaring that:

a) No contract, oral or otherwise, was entered into, or currently exists, between Bay Tek and Shoemaker;

b) No contract, oral or otherwise, was entered into, or currently exists, between Bay Tek and Wedges,

c) That no sum of money is due from Bay Tek to either Defendant; or

d) If this Court, contrary to Bay Tek's request, does not order and declare as set forth in each and every of subparagraphs (a) through (c) immediately above, then Bay Tek requests in the alternative that this Court determine and declare the respective rights and relationships of the parties with respect to any such contract as it relates to the parties to this lawsuit; and lastly

e) Bay Tek additionally requests that this Court award in its favor and against Shoemaker and/or Wedges, its attorneys' fees, expenses and/or interest to which Bay Tek may be entitled, and any other and further relief as this Court deems just.

Dated: December 1, 2018

                                              /s/ William P. McKinley
William P. McKinley  WI SBN#1072959
Patrick J. Coffey  WI SBN#1023953
Attorneys for the Plaintiff
Menn Law Firm, Ltd.
2501 E Enterprise Ave.
Appleton, WI 54913
Telephone: 920-731-6631
Fax: 920-560-4730
William-mckinley@mennlaw.com
Patrick-coffey@mennlaw.com